IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK S. BALES, ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-06-715-F |
| ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
|        **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying his application for supplemental security income benefits. United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __).  Both parties have briefed their respective positions, and thus the matter is at issue.  For the reasons stated herein, it is recommended that the decision of the Commissioner be reversed and the matter be remanded for further administrative proceedings.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for supplemental security income benefits on September 23, 2002, alleging a disability onset date of January 1, 1985.  Tr. 58, 59. The application was denied on initial consideration and on reconsideration at the administrative level.  Tr.26, 27, 28-30, 33-34.  Pursuant to Plaintiff's request, a hearing de

novo was held before an administrative law judge on August 25, 2004. Tr. 35. 215-34. Plaintiff appeared without counsel and offered testimony in support of his application. Tr. 21, 218-228, 231-34. A vocational expert also testified at the request of the administrative law judge. Tr. 54, 228-31. The administrative law judge issued his decision on January 20, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act and was not entitled to benefits. Tr. 13-15, 16-24. The Appeals Council denied Plaintiff's request for review on January 12, 2006, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 4-6.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of

disability at steps one through four. Id. at 751, n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. Id. at 751.

### III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 416.920. Tr. 17. He first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 18, 23. At steps two and three, the administrative law judge found that Plaintiff suffered from a depressive disorder, schizoid-typical personality disorder, and chronic back pain/degenerative disk disease, and that although these impairments were severe they were not severe enough either singly or in combination with Plaintiff's other impairments to meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. Tr. 18, 21, 23  At the fourth step of the sequential evaluation process, the administrative law judge found that Plaintiff could perform a wide range of light work, reduced by his need for only occasional bending, stooping, kneeling, or crouching, and was thus unable to perform his past relevant work as a groundskeeper, which was identified by the vocational expert as medium, unskilled work, Tr. 22-23, 24. At step five, the administrative law judge found that for a person with Plaintiff's residual functional capacity and vocational factors, the Medical-Vocational Guidelines, Rules  201.22, used as a framework for decision making, direct a finding of not disabled. Tr. 23, 24. The vocational expert also testified that a

hypothetical person with Plaintiff's characteristics would be able to perform the work of assembler/electrical, and the administrative law judge found that there are many other such jobs in the wide range of light work that Plaintiff would be able to perform that are in significant number. Tr. 23, 24. Thus, the administrative law judge concluded that Plaintiff was not under a disability and was not entitled to benefits. Tr. 23, 24.

## IV. DISCUSSION

Plaintiff raises three errors on appeal. First, he claims that the administrative law judge's analysis of his mental impairments was contrary to law and not supported by substantial evidence. Plaintiff's Opening Brief, p. 10. Second, Plaintiff claims that the administrative law judge failed to reference the relevant factors in his credibility analysis, and that the reasons he did provide were insufficient to support a finding that Plaintiff was not credible. Id. at 15, 18. Third, Plaintiff claims that the administrative law judge erred in failing to develop the record in several respects: by not ordering a consultative mental status examination; by failing to obtain missing medical records of which he was aware; by failing to recontact one of Plaintiff's treating physicians for clarification; and in failing to include evidence from "prior medical records" which he referenced in his analysis of Plaintiff's back impairment. Plaintiff's Opening Brief, p. 22-25.

### A. Mental Impairment Analysis

As his first claim of error, Plaintiff contends that the administrative law judge erred in the analysis of his mental impairments. Plaintiff's Opening Brief, p. 10. In particular, Plaintiff claims that the administrative law judge erred in failing to include post traumatic stress disorder (PTSD) among his severe impairments and in failing to

consider it in performing the psychiatric review technique. Id. at p. 12. He claims that the administrative law judge should have considered §12.06, Anxiety-Related Disorders, Listing of Impairments, 20 C.F.R. § 404, Part 404, Subpart P, Appendix 1, but instead only considered the listing pertinent to Affective Disorders, § 12.04. Id. He claims that the administrative law judge's psychiatric review technique was similarly flawed for his failure to consider Plaintiff's schizotypical personality disorder under § 12.08, Personality Disorders. Id.

He further claims that the administrative law judge only cited one piece of evidence in support of his finding that Plaintiff suffers from slight restrictions in social functioning and no limitations in concentration, persistence or pace – that is, the fact that Plaintiff earned a college degree in 1991. Plaintiff's Opening Brief, p. 13. Whereas he contends that both the evidence the administrative law judge did discuss, and that which he did not, establish that he had significant limitations in concentration, persistence and pace, and more than "slight" limitations in social functioning. Id. Plaintiff asserts that this error is not harmless because when combined with absences caused by chronic back pain, a reduction in concentration, and a very diminished ability to interact appropriately with peers and co-workers, would eliminate all work. Plaintiff's Opening Brief, p. 15.

The Commissioner responds first that the administrative law judge's failure to specifically consider listings under §§ 12.06 and 12.08 is not of any import because the "B" criteria of listings in §§ 12.04, 12.06, 12.08 is the same for all three. Commissioner's Brief, p. 3. Thus, according to the Commissioner, if the resulting limitations are not any

greater than those found by the administrative law judge, then the listing level would not have been met regardless of the diagnosis under consideration. Id. at 3-4.

With regard to Plaintiff's claim that the administrative law judge relied solely upon his attainment of a college degree in 1991, the Commissioner notes the alleged onset date of 1985. Commissioner's Brief, p. 4. The Commissioner contends the fact that Plaintiff could attend college and obtain a degree after this date conflicts with his claim of severe functional limitations, even though the degree was obtained many years ago. Id.

In response to Plaintiff's contention that the evidence the administrative law judge did discuss, and that which he did not discuss, establishes that he had significant limitations in concentration, persistence and pace, and more than "slight" limitations in social functioning, the Commissioner argues several factors. First, the Commissioner acknowledges the report of Menie M. Elisens, Ph.D. dated July 11, 2002, showing rigid, often paranoid, and delusional thinking; and possible hallucinations; but contends that this report does not show any particular difficulties in concentration, persistence or pace. Id. Second, the Commissioner contends that Plaintiff reported during his October 2002 initial evaluation at the Central Oklahoma Community Mental Health Center that he enjoyed watching television and being on computers. Id. The Commissioner contends that this is inconsistent with his May 2004 report from Central Oklahoma Community Mental Health Center showing evidence of slowed memory, flashbacks of physical and sexual abuse, and perfectionism causing difficulties in accomplishing simple tasks. Id. at 4-5. The Commissioner claims that Plaintiff's statements to his mental health professionals about his slowed memory and perfectionism "do not outweigh the fact that

Plaintiff attended college and obtained a degree during the period he states he was disabled or the fact that he apparently enjoyed 'being on computers.'" Id. at p. 5.

The Commissioner notes Plaintiff's claims that reports from his mental health care providers in July 2002, October 2002, and May 2004 show that he appeared to be unable to relate to others in a positive way; unlikely to be able to get along with supervisors or co-workers for any length of time; might respond to stress by lashing out either physically or verbally; was isolated with few friends; experienced depression, anger towards family, social phobia, and anxiety; and had paranoid and delusional thinking as well as conflicts with his family and neighbors. Id. (citing Tr. 125, 145, 168-71, 175, 208-14). However, the Commissioner contends that the last of these reports also noted that Plaintiff was "coping fairly well" with harassment from neighbors and his brothers, and that in "contrast to this evidence, the Court should consider Plaintiff's actual functioning," such as the fact that he regularly attended Sunday school/church and regularly ate lunch at a community center, "Food for Friends," Id. at p.5-6. The Commissioner further contends that in his hypothetical question to the vocational expert, the administrative law judge limited Plaintiff to working in relative isolation with limited contact with peers and supervisors, and that Plaintiff has not shown that his social limitations exceed those included in the hypothetical question. Id. at p. 6. With regard to Plaintiff's GAF scores being consistently below 50, the Commissioner, citing Tenth Circuit case law, argues that GAF scores of 45 or lower do not in and of themselves constitute evidence of significant functional limitation. Id.

In reply, Plaintiff argues that despite the hypothetical question to the vocational expert, the administrative law judge failed to include any mental limitations in the residual functional capacity assessment.  Plaintiff's Reply, p. 2.  The hypothetical limitation of limited contact is of diminished relevance, according to Plaintiff, in light of the vocational expert's testimony that a very diminished ability to interact appropriately with others would eliminate all work when combined with extended absences and a 20% reduction in concentration.  Id.  Plaintiff notes that the Commissioner does not contest that the administrative law judge failed to consider his PTSD in the psychiatric review technique, rendering the analysis legally deficient at step three.  Id. at p.3.  Plaintiff further notes that he does not argue that earning a college degree has no relevance, only that this single fact is not substantial competent evidence sufficiently linked to the PRT findings as required by law.  Id.  Although Plaintiff does again note the degree's remoteness in time, and argues that such does not necessarily establish an ability to engage in substantial gainful activity.  Id. at p. 3-4.  Finally, Plaintiff contends that the Commissioner cannot advocate post-hoc rationalizations to support the administrative law judge's decision that are not apparent from the decision itself.  Id. at p.4.

The regulations governing evaluation of a claimant's mental impairments provide for a psychiatric review "technique" (PRT) that must be followed.  See 20 C.F.R. § 416.920a. The technique is used first at step two of the sequential evaluation process to determine whether a mental impairment is " severe" within the meaning of the regulations.  See id. § 416.920a(d).  If the impairment is severe, the technique is then used at step three to determine whether the impairment meets or is equivalent in severity

to a listed mental disorder.  <u>See id.</u>, § 416.920a(d)(2).  The purpose of the PRT is threefold: to "(1) Identify the need for additional evidence to determine impairment severity; (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and (3) Organize and present our findings in a clear, concise, and consistent manner." 20 C.F.R. § 416.920a(a).

At step two of the sequential evaluation, the administrative law judge found two mental disorders to be among Plaintiff's severe impairments: depressive disorder, and schizoid-typical personality disorder.  The administrative law judge did not include PTSD as a severe impairment – although he did acknowledge in his decision that Central Oklahoma Community Mental Health Center had diagnosed Plaintiff with the disorder. Tr. 20, 168-171.  At step two, a mental impairment is severe if it "significantly limit[s] an individual's physical or mental ability to do basic work activities." <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005).   Basic work activities include: understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and the usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 416.921.  The Tenth Circuit has held that the showing of severity needed is "de minimus" at step two of the five-step process. <u>Grogan v. Barnhart</u>, 399 F.3d at  1263.

At step three of the sequential evaluation process, the administrative law judge must determine whether Plaintiff's severe mental impairments are of listing level. The listings governing mental disorders are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 et seq.  Each listing has three components: paragraph A criteria -- a set of medical

findings; paragraph B criteria -- a set of impairment-related functional limitations; and paragraph C criteria -- additional functional criteria.  See id. § 12.00 (A).  Paragraph B functional limitations are assessed using four criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  Id., § 12.00(C).  A claimant's mental disorder is of listing level under Listings 12.04, 12.06, and 12.08 if the mental disorder results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  §§ 12.04(B); 12.06(B); 12.08(B).

The administrative law judge stated that in "consideration of [Plaintiff's] mental allegations of depression" he completed a Psychiatric Review Technique form.  Tr. 21.  He further stated that "the form indicates the claimant has a personality dysfunction and history of substance addiction that have caused some slight restriction of his activities of daily living."  Tr. 21.  He then made the following finding:

> Listing 12.04 has been considered for Affective Disorders and depression; however, he has been found to have only slight restrictions in his activities of daily living; slight difficulties in maintaining social functioning; none for deficiencies of concentration, persistence or pace; and none for episodes of deterioration or decompensation.  The undersigned finds the claimant does not have a severe mental impairment that would meet or medically equal the severity of a listed impairment.  He has been able to complete an accounting/management degree through this period of time that shows he is able to concentrate and manage his time.

Tr. 21.  The administrative law judge's evaluation of the paragraph B and C criteria, at least with regard to Plaintiff's mental impairments, appears to be based exclusively on his achievement of a college degree in 1991. He does not refer to any of the medical or

10

other evidence to support his findings. He also fails to cite the Psychiatric Review Technique form completed by the psychological consultant, Carolyn Goodrich, Ph.D., in March 2003, and affirmed by a different psychologist in June 2003. Tr. 21, 185-98. The conclusions reached by Dr. Goodrich do not appear to be entirely consistent with those of the administrative law judge, but his use of non-standard terminology,"slight," to describe his findings makes it difficult to say for certain. Id. Dr. Goodrich evaluated Plaintiff under the listings for affective disorders and personality disorders, but not anxiety disorders - the category applicable to PTSD. Tr. 185. She found Plaintiff to have a moderate degree if limitation in activities of daily living "due to pain," a moderate degree of limitation in maintaining social functioning, no limitations in maintaining concentration, persistence or pace, and no episodes of decompensation. Id. at 195.

First, the undersigned agrees that the administrative law judge's finding that Plaintiff's PTSD was not severe, under the de minimus standard applicable at step two, was error. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process). The medical record shows repeated diagnoses of PTSD related to child sexual abuse, and that Plaintiff received medication for treatment of anxiety. Tr. 133, 134, 137, 140, 143, 153, 165, 171, 174. However, because some severe mental impairments were found at step two, the evaluation process did continue in this case. Moreover, as the Commissioner points out, the paragraph B criteria are the same for these three mental impairments; thus, the failure to specifically denominate PTSD as one of the

mental impairments under consideration for purposes of the PRT might well be harmless, if the PRT itself were otherwise sound.

However, the administrative law judge's analysis of the mental impairment is problematic. First, the undersigned notes that the administrative law judge uses the term "slight" to describe the level of functional impairment, whereas the regulations specifically require rating the degree of functional limitation by use of the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a (c)(4). However, even inferring that the "slight" rating is something less than "marked" (which would make a conclusion that Plaintiff's mental impairments did not meet the listing requirements correct) the decision does not contain the a detailed discussion of the medical or other evidence in the record which is required by the PRT.

According to § 416.920a(e)(2), the administrative law judge is required to discuss in his decision "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." Here, the administrative law judge did set out a fairly detailed discussion of three of Plaintiff's mental health treatment records: A July 2002 mental status form completed by psychologist Menie M. Elisens, Ph.D., an October 2002 psychosocial evaluation by Denise Hunter, LCSW, and a May 2004 treatment note from Central Oklahoma Community Mental Health Center. Tr. 19-20. Thereafter, he sets out the paragraph containing his PRT findings. Tr. 21. However, he does not relate those findings to any of the previously listed medical evidence, and they are seemingly inconsistent with it. For example, Dr. Elisens states that Plaintiff was slow moving,

cursed several people, was unable to relate to people in a positive way, had clouded judgment, few social skills and a low frustration tolerance. Tr. 19, 125. She opined that he was "very unlikely" to get along with either supervisors or co-workers for any length of time, and may respond to stress by lashing out either physically or verbally in a "very abusive way." Id. The problem areas noted by Central Oklahoma Community Mental Health Center in May 2004 included memory, concentration, obsessions, and cognitive process. Tr. 208. Plaintiff was noted to have moderate anxiety, perfectionism to point of difficulty accomplishing simple tasks, and social phobia and isolation. Id. The administrative law judge does not discuss any of this medical evidence in the context of his rating of Plaintiff's functional limitations, and the one piece of evidence he does discuss is apparently limited to only one of the functional areas: "concentration, persistence, or pace." See Tr. 21 ("shows he is able to concentrate and manage his time").

As noted above, the administrative law judge refers to a PRT form he completed, but fails to reference the PRT form completed by medical consultant Dr. Goodrich. See Tr. 21. It is unclear whether his own PRT relied upon that of Dr. Goodrich and his description of the form he completed is different enough from that of Dr. Goodrich to create doubt as to the basis for his own findings. For example, Dr. Goodrich found Plaintiff to be moderately limited in his activities of daily living "due to pain," yet the administrative law judge found "slight" limitations. See Tr. 21, 195. Dr. Goodrich found moderate limitations in social functioning, whereas the administrative law judge found slight limitation. Id. The administrative law judge states that "[t]his form indicates the [Plaintiff] has a personality dysfunction and history of substance addition that have

13

caused some slight restriction of his activities of daily living." Tr. 21. Although the Consultant's Notes portion of the form completed by Dr. Goodrich does mention a personality disorder, and history "of substance abuse denies current use," those two references are contained within one of three paragraphs of other information not referred to by the administrative law judge (including the PTSD diagnosis), and furthermore, neither of the two are linked by Dr. Goodrich to Plaintiff's activities of daily living. Tr. 197. In sum, the administrative law judge's failure to follow the PRT's terms and to link his findings to the evidence in the case has resulted in a decision that fails to "[o]rganize and present ... findings in a clear, concise, and consistent manner." See 20 C.F.R. § 416.920a(a).

As noted above, the Commissioner argues that there are several things in the record supporting the administrative law judge's rating of functional limitations at step three. However, the Tenth Circuit has repeatedly warned against judicial post hoc justification of the administrative law judge's decision. See, e.g., Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) ("[C]ourts [should] avoid usurping the administrative tribunal's responsibility to find the facts.").

In addition, the Tenth Circuit has narrowly construed the circumstances pursuant to which a harmless error analysis may be applied. See Allen, 357 F.3d at 1145. Such analysis may only be applied in the "right exceptional circumstance, i.e., where, based

on material the [administrative law judge] did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Id. Here, it is simply unclear what material the administrative law judge did consider in reaching his finding at step three, primarily because the PRT was either not employed or the required findings were not documented in the decision. It is certainly far from clear that "no reasonable administrative factfinder ... could have resolved the factual matter in any other way." Allen, 357 F.3d at 1145. There is nothing in the remainder of the sequential analysis that sheds conclusive light on the administrative law judge's findings at step three. The administrative law judge did not mention the Mental Residual Functional Capacity Assessment of Dr. Goodrich, and only discussed Plaintiff's subjective symptoms with regard to his physical impairments. See Tr. 22. He did mention in his decision that he included in his hypothetical question to the vocational expert a limitation of "requiring work in relative isolation with limited contact with peers and/or supervisors." Tr. 22. However, the transcript of the hearing actually reveals that the administrative law judge explained that what he meant by limited contact was "no participation in tasks that require team work in cooperation, things like that, to a large degree." Tr. 229. When the Commissioner's treatment of evidence is not apparent from the Commissioner's decision itself, it is more appropriate for the administrative law judge to remedy the error in the first instance. The improper – or at least poorly documented – use of the PRT in this case demonstrates the efficacy of the technique, and its importance to appellate review. Therefore, it is recommended that the matter be remanded to the administrative law

judge for further administrative proceedings. In light of this recommendation, it would be inappropriate to address Plaintiff's other claims of error.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the final decision of the Commissioner of Social Security Administration failed to apply correct legal standards and thus should be reversed and remanded for additional proceedings consistent with this Report and Recommendation. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by August 27, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 6th day of August, 2007.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE